**Jack McLAURIN, Plaintiff–Appellee,**

v.

**Keith MORTON and Roger Marriott, Defendants–Appellants.**

No. 94–1422.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 14, 1994.

Decided March 3, 1995.

KENNEDY, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. CONTIE, J. (pp. 950–954), delivered a separate dissenting opinion.

KENNEDY, Circuit Judge.

Defendant Roger Marriott, a correctional officer of the Michigan Department of Corrections ("Department of Corrections"), appeals the denial of qualified immunity in this section 1983 action brought by plaintiff Jack McLaurin, a prisoner at Jackson State Prison. Plaintiff's suit stemmed from an incident during which, at Marriott's order, mace was used to bring plaintiff down from the basketball goal and razor ribbon fence he had climbed in the prison exercise yard. Plaintiff alleges a violation of the Eighth Amendment through the use of excessive force and a violation of a state-created liberty interest under the Fourteenth Amendment. The District Court denied Marriott's motion for summary judgment. Marriott appeals only with respect to the District Court's denial of qualified immunity for plaintiff's state-created liberty interest claim.[1] For the reasons stated, we reverse.

## I.

On August 9, 1991, while confined to administrative segregation, plaintiff intentionally broke a water sprinkler in his cell, causing his cell to flood. Plaintiff was placed in a quiet cell for two hours for breaking the sprinkler and then was returned to his cell in administrative segregation. Upon his return, plaintiff discovered that the bed mattress in his cell was soaked with water and he complained to employees of the Department of Corrections.

Later that day, plaintiff was allowed to go to an exercise cage in the segregation exercise yard. While he was in the yard, he continued to complain about his wet mattress. Plaintiff alleged that Marriott made statements to the effect that he did not care about plaintiff's complaint. Plaintiff then climbed up on top of the basketball goal

Daniel E. Manville (argued and briefed), Detroit, MI, for plaintiff-appellee.

Katharyn A. Barron (argued and briefed), Office of the Atty. Gen., Corrections Div., Lansing, MI, for defendants-appellants.

Before: KENNEDY, CONTIE, and SUHRHEINRICH, Circuit Judges.

1. The court granted the motion of co-defendant Morton, another correctional officer, and that matter is not before us.

located in the exercise cage and started protesting.

Plaintiff alleges that Marriott and Morton called him derogatory names and told him he better come down. One of the prison staff called the duty deputy, Deputy Warden Jerry Hofbauer, to obtain approval to use mace if necessary to remove plaintiff from the goal. The control center log book indicated permission was given. It is unclear when and in what form this permission was conveyed to Marriott. Deputy Hofbauer instructed the caller to inform the officer-in-charge that a psychologist had been ordered to go to the exercise yard to talk plaintiff into coming down voluntarily.

Before the psychologist arrived, plaintiff was gassed on Marriott's order. Plaintiff then climbed from the basketball goal to a chain link fence which contained razor ribbon. The psychologist asked plaintiff what was going on. At the same time, correctional officers were yelling at plaintiff to get down and calling him an "asshole." Plaintiff alleges that, without any warning whatsoever, Marriott said, "All right, gas him again and charge him." Plaintiff was again gassed. It was too windy for the gas to be effective, so plaintiff had to be physically removed from the fence. He was taken to the emergency room, where a cut on his foot was treated.

Prison officials investigated the incident and disciplined Marriott, finding that he had violated PD–BCF–32.02, a Department of Corrections Policy Directive titled "Resisting Prisoners—Use of Chemical Agents and Physical Restraints." The version of PD–BCF–32.02 in effect at the time provided the following with respect to chemical agents:

[C]hemical agents shall be applied only in amounts necessary to gain control of a resisting prisoner. The application of . . . chemical agents shall not be capricious, retaliatory or punitive. . . .

It is essential that the supervisor in charge attempt to defuse the conflict by first talking directly to a resisting prisoner. The supervisor should hear the prisoner's version of the problem and attempt a non-confrontational resolution of the prisoner's concerns. If the use of force remains necessary the prisoner shall be advised of the intent to use force and be given a last opportunity to resist. . . .

With Warden or Deputy Warden approval, chemical agents may be used to subdue a prisoner when one of the following situations exists:

1. A prisoner is engaging in or seriously threatening self-mutilation or self-destructive acts and represents a serious threat to others if physically approached.

2. A prisoner is armed or barricaded and a delay in bringing the situation under control may result in a major disturbance or constitute a serious hazard to the prisoner, to others, or to state property.

When the use of a chemical agent is planned against a specific prisoner, and when time permits, medical staff shall be consulted to ensure there is no medical reason to preclude chemical agent use. . . .

The prison officials concluded that Marriott had acted capriciously in administering the gas and that he had failed to consult first with medical personnel.

Plaintiff sued Morton and Marriott under 42 U.S.C. § 1983, alleging that their failure to follow the policy directive violated a state-created liberty interest protected by the Fourteenth Amendment and that the use of the mace constituted excessive force in violation of the Eighth Amendment. Morton and Marriott moved for summary judgment, contending that they were entitled to qualified immunity. The District Court referred the motion to a magistrate judge.

The magistrate judge concluded, in a report adopted by the District Court, that Morton was entitled to qualified immunity but that Marriott was not. The magistrate judge found that PD–BCF–32.02 created a liberty interest and that a question of material fact remained as to whether Marriott's actions violated clearly established law. The magistrate judge also found that a genuine issue of material fact remained regarding plaintiff's Eighth Amendment claim against Marriott. Marriott now appeals the denial of qualified immunity as to plaintiff's Fourteenth Amend-

ment claim only. The excessive force claim is still pending before the District Court.

## II.

Government officials performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). When a claim to qualified immunity arises in the context of a motion for summary judgment, "we must first decide whether the plaintiff has stated a section 1983 claim against the individual defendants before addressing the qualified immunity question ... If [plaintiff] has stated a claim, then we must examine whether summary judgment is warranted on the grounds of qualified immunity." *Black v. Parke,* 4 F.3d 442, 445–46 (6th Cir.1993); *Carlson v. Conklin,* 813 F.2d 769, 771 (6th Cir.1987).

Plaintiff has stated a section 1983 claim if he has shown a violation of a constitutionally-protected right. In analyzing the claim involved in this appeal, we must first determine whether the policy directive created a liberty interest and, if so, what minimum process is constitutionally due plaintiff because of the liberty interest. We must then determine whether plaintiff received the requisite due process. Only if plaintiff has a constitutional claim or there are questions of fact which, if resolved in his favor, establish a constitutional claim, do we need to reach the question of qualified immunity. *Black,* 4 F.3d at 446–49.

A district court's denial of summary judgment based upon qualified immunity is a matter of law which we review *de novo. Black,* 4 F.3d at 444 (6th Cir.1993). We have held that the issue of whether conduct violates clearly-established law is purely a question of law, an issue which the trial court cannot simply avoid by characterizing it as a disputed question of fact. *Dominque v. Telb,*

831 F.2d 673, 677 (6th Cir.1987). On the other hand, "if genuine issues of material fact exist as to whether [defendant] actually did commit acts that would violate a clearly established right, then summary judgment on qualified immunity is improper." *Black,* 4 F.3d at 445.

We find that the District Court improperly denied summary judgment because the policy directive creates no liberty interest. The policy directive creates a liberty interest if it constitutes more than a simple procedural guideline and uses "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed ... and that [the use of chemical agents] will not occur absent specified substantive predicates—viz., 'the need for control' or 'the threat of a serious disturbance.' "

*Black,* 4 F.3d at 446 (quoting *Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983)); *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989). Taken as a whole, the policy directive here leaves considerable official discretion and thus does not create a liberty interest.

The policy does contain some mandatory language. For instance, when time permits, medical staff "*shall* be consulted to ensure there is no medical reason to preclude chemical agent use." (Emphasis added.) The policy also provides that chemical agents "*shall* be applied only in amounts necessary to gain control." (Emphasis added). However, the amount necessary to gain control is left to the judgment or discretion of the officer.[2] In *Kentucky Department of Corrections,* 490 U.S. at 464 n. 4, 109 S.Ct. at 1910 n. 4, the Supreme Court cautioned that courts should not "search regulations for *any* imperative that might be found. The search is for *relevant* mandatory language that expressly requires the decisionmaker to apply certain substantive predicates in determining whether an inmate may be deprived of the particular interest in question." (Emphasis in origi-

2. The policy also requires that before force is used, the prisoner should be advised of the intent to use force. Plaintiff does not claim that he was

not told force would be used to get him down if he continued to refuse to do so.

nal.) The policy requirement that the prisoner be advised of the intent to use force may be such a predicate, but plaintiff does not claim he was not told that force would be used if he refused to come down.

PD–BCF–32.02 does not establish mandatory, inflexible procedures which must be followed before chemical agents are used. Taken as a whole, it provides guidelines to aid the decisionmaking of prison officials while allowing considerable discretion. For instance, although it prohibits the use of chemical agents in a "capricious" manner, what is capricious must be determined by the officials. Furthermore, the officials have to make their own decision concerning when a prisoner is "resisting" or what is considered "self-mutilation or self-destructive acts." In this instance, the prison officials concluded that Marriott violated the policy. However, even if Marriott had followed the policy guidelines he still had discretion to determine whether chemical agents were necessary to prevent harm to plaintiff and to the other officers who were trying to get him to come down.

Furthermore, the types of regulations which we have found to create liberty interests are distinguishable from the type of policy directive at issue here. The regulations creating liberty interests have not involved situations where prison officials must make judgments in response to immediate security threats. Instead, they address situations where there is at least time for a carefully considered decision, if not a formal hearing. For instance, in *Mackey v. Dyke,* 29 F.3d 1086 (6th Cir.1994), we found a liberty interest in a prisoner's release from segregation after he was entitled to be reclassified, because a detailed hearing process was required for segregating him in non-emergency situations. Likewise, in *Doe v. Sullivan County,* 956 F.2d 545 (6th Cir.) *cert. denied,* —— U.S. ——, 113 S.Ct. 187, 121 L.Ed.2d 131 (1992), we found a liberty interest where a jail manual required prisoners to

be classified upon their admission to prison and established factors such as safety which must be considered.[3]

The Supreme Court has recognized the need to limit restrictions federal courts place on prison officials' judgments concerning security and discipline. "[S]imply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations.... Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights ..." *Bell v. Wolfish,* 441 U.S. 520, 545–46, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979) (citations omitted). As a result,

> [p]rison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel.... Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Id.* at 547, 99 S.Ct. at 1878. *See also Hewitt,* 459 U.S. at 474, 103 S.Ct. at 872 ("a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators") (citation omitted).

In situations such as the one at bar, prison officials must make rapid judgments concerning the preservation of order and security. "Although prison officials are not free under any circumstances to use physical force indiscriminately ... using chemical agents in a humane manner to control recalcitrant inmates who pose threats to institutional security will rarely be a proper basis for judicial oversight." *Colon v. Schneider,* 899 F.2d 660, 669 (7th Cir.1990). As the Supreme Court has stated,

> [t]he creation of procedural guidelines to channel the decisionmaking of prison officials is, in the view of many experts in the

---

**3.** *See also Howard v. Grinage,* 6 F.3d 410 (6th Cir.1993) (regulation requiring hearing before placing prisoner in restricted security); *Black,* 4 F.3d at 448 (prisoner entitled to review of segregation status within reasonable time and chance to respond in writing); *Beard v. Livesay,* 798

F.2d 874 (6th Cir.1986) (regulation requiring hearing before reclassifying prisoner); *Franklin v. Aycock,* 795 F.2d 1253 (6th Cir.1986) (procedures mandating hearing before disciplinary segregation imposed with proof of guilt required by a preponderance of the evidence).

field, a salutary development. It would be ironic to hold that when a State embarks on such desirable experimentation it thereby opens the door to scrutiny by the federal courts, while States that choose not to adopt such procedural provisions entirely avoid the strictures of the Due Process Clause. The adoption of such procedural guidelines, without more, suggests that it is these restrictions alone, and not those federal courts might also impose under the Fourteenth Amendment, that the State chose to require.

*Hewitt,* 459 U.S. at 471, 103 S.Ct. at 871. We therefore conclude plaintiff has not stated a state-created liberty interest claim and grant Marriott's motion for summary judgment.

■ Plaintiff's Eighth Amendment claim remains pending before the District Court. The dissent raises an important issue on which the circuits are split. There are two competing interests here. Granting qualified immunity on only one of the claims may reduce discovery but it does not eliminate it. Additionally, defendant will nonetheless be exposed to trial, albeit a more limited one. Thus, an immediate appeal of less than all claims does not afford defendant complete relief. To the extent that it affords a defendant relief, the purpose recognized in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) of relieving public officials from the cost of litigation is advanced. However, since there is still discovery and trial of the remaining issues, the value of the final judgment rule is lost.

The Eleventh Circuit, which addressed the issue en banc with two judges dissenting, *Green v. Brantley,* 941 F.2d 1146 (11th Cir. 1991), concluded that a denial of summary judgment based on qualified immunity was immediately appealable even though the second claim of two civil rights damage claims would proceed to trial even if the qualified immunity appeal was successful. *Id.* at 1148–49. The *Green* court noted that "[a] defendant's litigation burdens are lessened when a claim is dismissed" because discovery is limited to the issue for which there is no immunity and the trial may be shortened or more focused. *Id.* at 1149.

In *Schrob v. Catterson,* 967 F.2d 929 (3d Cir.1992), the Third Circuit, relying on the dissent in *Green,* did not allow an immediate appeal of the denial of a motion to substitute the United States as a defendant (it would have replaced the individual defendants, thus relieving them of liability) where the defendants still would be required to go to trial on *Bivens* claims regardless of whether the substitution occurred. *Id.* at 939. The *Schrob* court stressed the importance of the final judgment rule and stated that the Eleventh Circuit had overstated the benefits of an immediate appeal, especially where the claims arose from a common nucleus of fact and the defendants would still be subject to money damages. *Id.* at 941.

On balance, we believe permitting defendant's appeal best meets the objectives of *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), which states that the qualified immunity doctrine was fashioned to "avoid 'subject[ing] government officials *either* to the costs of trial or to the burdens of broadreaching discovery.'" *Id.* at 526, 105 S.Ct. at 2815 (emphasis added) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). We have permitted appeal of qualified immunity issues when other claims to which qualified immunity was not a defense remained pending in the district court. Thus, in *Huron Valley Hospital, Inc. v. City of Pontiac,* 792 F.2d 563 (6th Cir.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986), we heard an appeal on qualified immunity involving a civil rights claim even though a pending antitrust claim, which was not appealed, involved the same evidence. Likewise, in *Kennedy v. City of Cleveland,* 797 F.2d 297 (6th Cir.1986), *cert. denied,* 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987), we held that plaintiff's request for injunctive relief against the defendants in their official capacity did not preclude the defendants' interlocutory appeal of the denial of their claim of qualified immunity. *See also Walton v. City of Southfield,* 995 F.2d 1331 (6th Cir.1993). Accordingly, we adopt the reasoning of *Green* and conclude we have jurisdiction to hear this appeal.

## III.

For the foregoing reasons, we REVERSE the District Court with respect to plaintiff's state-created liberty interest claim and REMAND for further proceedings consistent with this opinion.

CONTIE, Circuit Judge, dissenting.

I do not believe this court has jurisdiction under the collateral order doctrine to review whether defendant has validly raised qualified immunity as a defense to liability in regard to the Fourteenth Amendment claim for the following reasons. In *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court held that the denial of qualified immunity to a federal official is appealable as an interlocutory appeal under the collateral order doctrine. The Supreme Court explained that under the collateral order doctrine, first articulated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), an interlocutory decision of the district court is appealable if it falls within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 472 U.S. at 524–25, 105 S.Ct. at 2814.

To qualify as an appealable collateral order, an order must: (1) "conclusively determine the disputed question;" (2) "resolve an important issue completely separate from the merits of the action;" and (3) "be effectively unreviewable on appeal from a final judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799, 109 S.Ct. 1494, 1498, 103 L.Ed.2d 879 (1989), quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). The Supreme Court has clarified that the third prong of the test is satisfied only where the order at issue involves "an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." *Id.* The Supreme Court in *Mitchell* held that the denial of summary judgment on the issue of qualified immunity satisfied these requirements and was appealable immediately, even though no final judgment in the case as a whole had been entered. 472 U.S. at 530, 105 S.Ct. at 2817–18. *Mitchell* interpreted *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), as recognizing that qualified immunity was an "entitlement" to immunity from suit and the burdens of a trial, not a defense to liability. *Id.* at 526, 105 S.Ct. at 2815.

In reaching this conclusion, the Supreme Court first determined that absolute immunity was the "entitlement" of a government official not to have to answer for "his conduct in a civil damages action," and that such an "entitlement" was lost forever if an immediate appeal of its denial was not allowed. *Id.* at 525, 105 S.Ct. at 2814–15. The *Mitchell* Court held that because of *Harlow*'s clarifications about the nature of qualified immunity, it was apparent that the "entitlement" of qualified immunity, like the "entitlement" of absolute immunity, would be lost forever if the claiming party was required to go through a trial, and, thus, early review was warranted. *Id.* at 526, 105 S.Ct. at 2815.

The Court stated the following in this regard:

The conception animating the qualified immunity doctrine as set forth in *Harlow v. Fitzgerald*, 457 U.S. 800 [102 S.Ct. 2727, 73 L.Ed.2d 396] (1982), is that "where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" *Id.*, at 819 [102 S.Ct. at 2738], quoting *Pierson v. Ray*, 386 U.S. 547, 554 [87 S.Ct. 1213, 1218, 18 L.Ed.2d 288] (1967). As the citation to *Pierson v. Ray* makes clear, the "consequences" with which we were concerned in *Harlow* are not limited to liability for money damages; they also include "the general costs of subjecting officials to the risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Harlow*, 457 U.S. at 816 [102 S.Ct. at 2737]. Indeed, *Harlow* emphasizes that even such

pretrial matters as discovery are to be avoided if possible, as "[i]nquiries of this kind can be peculiarly disruptive of effective government." *Id.* at 817 [102 S.Ct. at 2737–38].

With these concerns in mind, the *Harlow* Court refashioned the qualified immunity doctrine in such a way as to "permit the resolution of many insubstantial claims on summary judgment" and to avoid "subject[ing] government officials either to the costs of trial or to the burdens of broad-reaching discovery" in cases where the legal norms the officials are alleged to have violated were not clearly established at the time. *Id.,* at 817–818 [102 S.Ct. at 2737–38]. Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *See id.,* at 818 [102 S.Ct. at 2738]. Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts. *Harlow* thus recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. *The entitlement is an immunity from suit rather than a mere defense to liability;* and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.

472 U.S. at 525–26, 105 S.Ct. at 2815 (emphasis added).

Although the district court's order in the present case is an appealable collateral order under *Mitchell,* the particular appeal which defendant seeks to bring is not a proper interlocutory appeal under the collateral order doctrine because it will not resolve the question of whether defendant is immune from suit for civil damages based on his conduct, which is the sole purpose for granting an interlocutory appeal in regard to qualified immunity in the first place. The ratio-

nale for granting an interlocutory appeal in order to determine whether a federal official should have to stand trial does not exist in the present case because defendant will have to stand trial and answer for "his conduct in a civil damages action" irrespective of the disposition of this appeal. On appeal, defendant is not contesting that he is immune from suit in regard to plaintiff's Eighth Amendment claim alleging a violation of the cruel and unusual punishment clause, and defendant will thus have to stand trial and answer for his conduct in a civil damages action in regard to this claim.

To understand this point, it is necessary to delineate the unusual procedural posture of this case. On February 21, 1992, plaintiff filed a *pro se* complaint alleging that defendants Morton and Marriott had violated his federal constitutional right against cruel and unusual punishment under the Eighth Amendment. On October 28, 1992, defendants moved for summary judgment. A magistrate issued a report and recommendation on February 26, 1993, denying defendants' motion for summary judgment, finding that defendants were not entitled to dismissal of the Eighth Amendment claim as disputed issues of material facts remained surrounding the behavior of both defendants. In an order of May 17, 1993, the district court accepted the magistrate's report and recommendation and denied defendants' motion for summary judgment in regard to the Eighth Amendment allegation.

In the meantime, on March 23, 1993, after obtaining counsel, plaintiff filed an amended complaint. In addition to alleging a violation of his Eighth Amendment right to be free from cruel and unusual punishment, he alleged that his constitutional right to due process had been violated under the Fourteenth Amendment by the use of mace. Plaintiff argued that this use violated a state-created liberty interest that gas would not be used unless one or more of the criteria contained in a state policy directive were found to exist. Defendants responded that they were entitled to qualified immunity in regard to both claims and again made a motion for summary judgment. On March 2, 1994, the magistrate issued a report and recommenda-

tion, stating that defendant Morton was entitled to qualified immunity, but that defendant Marriott's motion for summary judgment should be denied as he was not entitled to qualified immunity and genuine issues of material fact remained. The district court adopted the magistrate's report and recommendation on March 23, 1994 and set the case for trial. On April 11, 1994, defendant Marriott filed an interlocutory appeal based on the district court's denial of qualified immunity in regard to the Fourteenth Amendment claim. As stated on page 4 of the Brief of Defendant-appellant, defendant Marriott's appeal is limited to the district court's denial of qualified immunity in regard to the Fourteenth Amendment claim. Defendant is specifically not appealing the district court's May 17, 1993 denial of his motion for summary judgment in regard to the cruel and unusual punishment claim under the Eighth Amendment, and therefore there will be a trial in regard to this issue.

Because of the procedural posture of this case, I do not believe this court has jurisdiction to hear an interlocutory appeal. The purpose of the doctrine of qualified immunity is to shield public officials from damages actions unless their conduct was unreasonable in light of clearly established law. *Elder v. Holloway*, —— U.S. ——, ——, 114 S.Ct. 1019, 1021, 127 L.Ed.2d 344 (1994). On appeal, defendant Marriott is not arguing that he is immune from suit and should be shielded from a civil damages action, but, in essence, is arguing that plaintiff fails to state a claim for relief under the Fourteenth Amendment because no state-created liberty interest was violated. However, this argument is not the proper subject of an interlocutory appeal. The purpose of affording public officials qualified immunity from suit is to protect them from the burden of going to trial and from "undue interference with their duties." *Id.* at ——, 114 S.Ct. at 1022. This purpose is not met in the present case. Usually in a case involving the denial of qualified immunity to a public official, absent an immediate appeal, "the central benefits of qualified immunity—avoiding the costs and general consequences of subjecting public officials to the risks of discovery and trial"—are lost. *Puerto Rico Aqueduct and Sewer Authority*

*v. Metcalf & Eddy, Inc.*, —— U.S. ——, ——, 113 S.Ct. 684, 687, 121 L.Ed.2d 605 (1993). Therefore, an interlocutory appeal is necessary to ensure that the entitlement not to stand trial is preserved. In the present case, there is no need for an immediate interlocutory appeal in order to safeguard this entitlement, because defendant will stand trial in regard to the Eighth Amendment claim irrespective of the outcome of this appeal. As the Third Circuit in *Schrob v. Catterson*, 967 F.2d 929, 942 (3rd Cir.1992) pointed out, there is a price to be paid for allowing an immediate interlocutory appeal in regard to a denial of sovereign immunity when other claims for money damages are pending because it allows a party to delay the normal progress of the cause before the district court. I believe in the present case, the majority's holding results in a needless delay in resolving this case, a delay in which the memories of witnesses will become less clear, and in judicial resources being needlessly expended by allowing piecemeal litigation.

As the Supreme Court stated in *Mitchell*, in an interlocutory appeal, an appellate court must consider the plaintiff's factual allegations concerning the defendant's actions in resolving the immunity issue to determine whether the law clearly proscribed these actions. 472 U.S. at 528, 105 S.Ct. at 2816–17. In the present case, the majority is unable to determine whether the law clearly proscribed defendant's actions without also reviewing the Eighth Amendment claim. As the Supreme Court stated, an appellate court reviewing the denial of a defendant's claim of qualified immunity "need not ... determine whether the plaintiff's allegations actually state a claim." *Id.* However, in the present case, this is what the majority has done—determined in an interlocutory appeal that plaintiff's allegations do not state a Fourteenth Amendment claim. I do not believe this is the proper subject of an interlocutory appeal in regard to qualified immunity. The only issue this court may determine in an interlocutory appeal reviewing qualified immunity is whether or not, as a matter of law, defendant is immune from suit and need not stand trial because the actions alleged do not violate clearly established law. This court is

unable to determine whether the law clearly proscribed the actions defendant took in the present case, because this court has not been asked to review defendant's conduct under the cruel and unusual punishment clause of the Eighth Amendment. Under the Supreme Court's opinion in *Mitchell*, this court does not have jurisdiction to review in an interlocutory appeal whether defendant validly raises qualified immunity as a defense to liability in regard to the Fourteenth Amendment claim, when there will be a trial in regard to the Eighth Amendment claim based on the same underlying set of facts concerning defendant's conduct. In an interlocutory appeal involving qualified immunity, the reviewing court must determine whether a defendant is immune from suit and need not stand trial or whether he is not immune from suit and must stand trial. The majority in the present case is holding that defendant is immune from suit in regard to the Fourteenth Amendment claim, although defendant is not contesting on appeal that he is immune from suit in regard to an Eighth Amendment claim. I believe that because defendant fails to claim that he is completely "immune from suit" (in other words, that he is entitled not to stand trial based on his actions), he is not bringing a proper interlocutory appeal under the collateral order doctrine. Although the majority has found that the policy directive does not create a liberty interest, this finding has no bearing on the issue of whether defendant is completely immune from suit and whether this case will go to trial or not. The identical set of facts, for which the majority states defendant is immune from suit under the Fourteenth Amendment, will be reviewed at trial under the Eighth Amendment. At trial, defendant presumably would be free to raise qualified immunity as a defense to liability in regard to the Eighth Amendment claim. Such piecemeal litigation is at odds with the rationale for allowing interlocutory appeals on the issue of qualified immunity in the first place. *See Green v. Brantley*, 941 F.2d 1146, 1154–56 (11th Cir.1991) (Johnson, J., dissenting) (majority overestimated the benefits of permitting an immediate appeal, since the same evidence needed to prove the claim from which the defendant may be immune is also needed to prove the claims that must go forward in any event). Alternatively, defendant could try to argue that the majority's opinion is res judicata on the issue of immunity and that he need not stand trial at all because he is immune from suit.

Finally, the present appeal does not come within the collateral order doctrine because the issue raised would not be effectively unreviewable on appeal from a final judgment. As this court stated in *United States v. One Juvenile Male*, 40 F.3d 841 (6th Cir. 1994), the third prong of the collateral order doctrine is satisfied only if the appeal involves "an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." The appeal in the present case does not involve an asserted right—the entitlement not to stand trial—which must be protected by granting an immediate interlocutory appeal. As this court in *Haynes v. Marshall*, 887 F.2d 700, 703 (6th Cir.1989) stated:

> If the issue sought to be reviewed under the collateral order doctrine relates to a claim of immunity from suit, an order denying that immunity must be reviewed before the proceedings terminate lest the purpose for the immunity be lost. After final judgment, it is too late to conclude that a party should not have been subjected to trial. In contrast, a claim of immunity from liability, like a challenge to jurisdiction, is effectively reviewable after a final order and does not fit within the collateral order exception. *See, e.g., Marrical v. Detroit News, Inc.*, 805 F.2d 169, 172 (6th Cir.1986) (denial of a claim to immunity from liability is not an immediately appealable collateral order).

*Id.* (footnote omitted).

For these reasons, I do not believe that defendant may make a piecemeal interlocutory appeal—contesting on appeal that he is immune from suit under the Fourteenth Amendment, but not contesting on appeal that he is immune from suit under the Eighth Amendment. To meet the requirements for raising the issue of qualified immunity in an interlocutory appeal as articulated by the Supreme Court in *Mitchell*, defendant would have to argue that his conduct is im-

mune from suit under both the Fourteenth and the Eighth Amendment because his conduct did not violate any clearly established constitutional rights. Rather than using qualified immunity as an entitlement not to stand trial, defendant is using qualified immunity as a defense against liability solely in regard to the Fourteenth Amendment claim. As the Supreme Court held in *Mitchell,* "the entitlement is an immunity from suit rather than a mere defense to liability." 472 U.S. at 526, 105 S.Ct. at 2815. Because defendant is not claiming that he is completely immune from suit and is entitled not to stand trial, there is no reason for this court to hear an immediate interlocutory appeal in order to keep the case from erroneously going to trial. In granting an interlocutory appeal on the issue of qualified immunity, the Supreme Court in *Mitchell* was concerned about the consequences "of subjecting officials to the risks of trial," the burdens of discovery, and "the distraction of officials from their governmental duties." *Id.* Since on appeal defendant does not contest the district court's denial of his motion for summary judgment in regard to the Eighth Amendment claim, the case will go to trial on this issue, and defendant will be spared none of the consequences that the grant of an interlocutory appeal regarding qualified immunity is supposed to avoid. On balance, I do not believe the justifications for permitting an immediate interlocutory appeal stated by the majority are compelling and the benefits discussed are illusory. I agree with the Third Circuit in *Schrob,* 967 F.2d at 942, that the narrow range of appeals permitted under the collateral order doctrine is not met when there is a denial of immunity but other claims for money damages based on the same common nucleus of facts remain.

To conclude, because defendant does not claim that he is immune from suit and entitled not to stand trial, but instead raises qualified immunity as a defense to liability solely in regard to the Fourteenth Amendment claim, defendant has not met the requirements which the Supreme Court stated in *Mitchell v. Forsyth* are the reasons for granting an interlocutory appeal under the collateral order doctrine. Therefore, I believe this appeal should be dismissed for lack of jurisdiction, and the case should be remanded to the district court so that it may proceed to trial.