**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**ONE JUVENILE MALE,**
**Defendant–Appellant.**

**No. 94–5484.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 4, 1994.

Decided Nov. 22, 1994.

Curtis L. Collier, Asst. U.S. Atty. (argued and briefed), Harwell G. Davis, III, Asst. U.S. Atty., Office of the U.S. Atty., Chattanooga, TN, for plaintiff-appellee.

Fielding H. Atchley, Jr. (argued and briefed), Dietzen, Atchley & Wright, Chattanooga, TN, for defendant-appellant.

Before KENNEDY, MARTIN and GUY, Circuit Judges.

KENNEDY, Circuit Judge.

Defendant, a juvenile male, was charged in a sealed ten-count information with committing various acts of juvenile delinquency, including violations of the federal "carjacking" statute, 18 U.S.C. § 2119, and the armed violence enhancement statute, 18 U.S.C. § 924(c). Defendant appeals the District Court's order granting the United States' motion to prosecute defendant as an adult, which was entered pursuant to the Federal Juvenile Delinquency Act ("FJDA"), 18 U.S.C. § 5032. For the reasons that follow, we affirm.

A juvenile may not be proceeded against in federal district court "except that, with respect to a juvenile fifteen years and older alleged to have committed an act after his fifteenth birthday which if committed by an adult would be a felony that is a crime of violence ..., criminal prosecution on the basis of the alleged act may be begun by motion to transfer of the Attorney General in the appropriate district court of the United States, if such court finds, after hearing, such transfer would be in the interest of justice[.]" 18 U.S.C. § 5032. After conducting a hearing, the District Court concluded that the requested transfer would be in the interest of justice. Defendant immediately appealed the order, and the District Court stayed the criminal proceedings pending this appeal.

## I.

■ The first issue we must address is whether the transfer order is appealable before trial, a question not yet answered by this Circuit. " '[T]he final judgment rule is the dominant rule in federal appellate practice.' 6 Moore, Federal Practice (2d ed. 1953), 113." *Flanagan v. United States*, 465 U.S. 259, 270, 104 S.Ct. 1051, 1057, 79 L.Ed.2d 288 (1984) (quoting *DiBella v. United States*, 369 U.S. 121, 126, 82 S.Ct. 654, 658, 7 L.Ed.2d 614 (1962)). This rule is embodied in 28 U.S.C. § 1291, which vests federal courts of appeals with jurisdiction to hear "appeals from all final decisions of the district courts." In criminal cases, this policy of finality operates to bar appellate review until after a defendant has been convicted and sentenced. *Id.* at 263, 104 S.Ct. at 1053–54 (quoting *Berman v. United States*, 302 U.S. 211, 212, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937)).

■ The Supreme Court crafted a narrow exception to the final judgment rule in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), which has come to be known as the collateral order doctrine. Under the collateral order doctrine, an appellate court may review decisions that do not end the litigation but "which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. at 1225–26. Because of the importance of the prompt adjudication of criminal charges, the Supreme Court has applied the exception with "utmost strictness in criminal cases." *Flanagan*, 465 U.S. at 265, 104 S.Ct. at 1055.

■ To qualify as an appealable collateral order, an order must: (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) "be effectively unreviewable on appeal from a final judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799, 109 S.Ct. 1494, 1498, 103 L.Ed.2d 879 (1989) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463,

468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (footnote omitted)). The Supreme Court has clarified that "the third prong of the *Coopers & Lybrand* test is satisfied only where the order at issue involves 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.'" *Id.* at 799, 109 S.Ct. at 1498 (quoting *United States v. MacDonald,* 435 U.S. 850, 860–61, 98 S.Ct. 1547, 1552–53, 56 L.Ed.2d 18 (1978)).

■ All circuits addressing the issue have held that an order transferring a juvenile to be tried as an adult satisfies the *Coopers & Lybrand* test and is an immediately appealable collateral order. *United States v. Bilbo,* 19 F.3d 912, 914–15 (5th Cir.1994); *United States v. Gerald N.,* 900 F.2d 189, 189–90 (9th Cir.1990); *In re Sealed Case,* 893 F.2d 363, 366–68 (D.C.Cir.1990); *United States v. A.W.J.,* 804 F.2d 492, 492–93 (8th Cir.1986); *United States v. C.G.,* 736 F.2d 1474, 1476–77 (11th Cir.1984). There is no doubt that the first two requirements of the test are satisfied: the court has determined that defendant will be tried as an adult and this determination is independent of the merits of the criminal charges against defendant.

As for the third requirement, we believe defendant's right to the special protections afforded juveniles at trial would be lost if he were tried and convicted as an adult before being able to appeal the transfer order. "A successful prosecution under the [Federal Juvenile Delinquency] Act does not result in a criminal conviction but rather in an adjudication that the defendant has entered into a state of juvenile delinquency." *United States v. Chambers,* 944 F.2d 1253, 1257 (6th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1217, 117 L.Ed.2d 455 (1992). The FJDA also provides for pre-trial detention in a foster home or community-based facility near the juvenile's home instead of being detained in an adult penal institution, 18 U.S.C. § 5035; a distinct speedy trial provision exclusively for juveniles, 18 U.S.C. § 5036; and "[t]he sealing of records and the withholding of name and picture from news media ... [,] 18 U.S.C. § 5038[.]" *Gerald N.,* 900 F.2d at 190. "In addition, if convicted and sentenced to prison, [a juvenile] would face the distinct possibility of incarceration in an adult penal institution during the pendency of his appeal, since under the Bail Reform Act of 1984 it is no easy matter to obtain bail pending appeal." *A.W.J.,* 804 F.2d at 493 (citations omitted). As a post-conviction appeal of a determination that a juvenile be tried as an adult would render the protections of the FJDA meaningless, we join our sister circuits in holding that we have appellate jurisdiction to review transfer orders under the collateral order doctrine.

## II.

■ The purpose of the FJDA is to "remove juveniles from the ordinary criminal process in order to avoid the stigma of a prior criminal conviction and to encourage treatment and rehabilitation." *United States v. Brian N.,* 900 F.2d 218, 220 (10th Cir.1990) (citations omitted). This purpose must be balanced, however, against the need to protect the public from "violent and dangerous individuals and providing sanctions for anti-social acts. And that balance must be struck by the district court in the context of a transfer hearing." *United States v. Alexander,* 695 F.2d 398, 401 (9th Cir.1982) (quoting *United States v. E.K.,* 471 F.Supp. 924, 932 (D.Or.1979)), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2458, 77 L.Ed.2d 1337 (1983). Thus, a motion to transfer is properly granted where a court determines that the risk of harm to society posed by affording the defendant more lenient treatment within the juvenile justice system outweighs the defendant's chance for rehabilitation.

Before making this determination, a court must consider and make record findings as to the following factors:

1. the age and social background of the juvenile;

2. the nature of the alleged offense;

3. the extent and nature of the juvenile's prior delinquency record;

4. the juvenile's present intellectual development and psychological maturity;

5. the nature of past treatment efforts and the juvenile's response to such efforts; [and]

6. the availability of programs designed to treat the juvenile's behavioral problems.

18 U.S.C. § 5032. Other circuits have uniformly applied an abuse of discretion standard to district courts' transfer decisions, as do we. *See, e.g., Bilbo,* 19 F.3d at 915 (quoting *United States v. Doe,* 871 F.2d 1248, 1255 (5th Cir.), *cert. denied* 493 U.S. 917, 110 S.Ct. 276, 107 L.Ed.2d 257 (1989)); *Gerald N.,* 900 F.2d at 191 (quoting *Alexander,* 695 F.2d at 400); *A.W.J.,* 804 F.2d at 493.

The District Court in the present case conducted a transfer hearing and made record findings as to each of the factors enumerated in the statute. Defendant argues that the court's conclusion that defendant's prospects for rehabilitation in the state juvenile system were slight was contrary to the record developed at the transfer hearing. However, what the findings of the court indicate is that some factors were inconclusive while others cut either in favor or against trying defendant as a juvenile. The court then balanced these factors to reach its conclusion.

There was some evidence that defendant had had a stable home environment. Defendant's aunt with whom he lived for a number of years provided him with structure and discipline. She also, however, had eight foster children to supervise as well. Defendant left his aunt's home because she was too strict, went to live with his mother and eight months later engaged in the alleged crime spree. Defendant's prior delinquency record was not extensive. He had been charged with vandalism and aggravated burglary; both charges ended in dismissal. There was testimony that defendant had performed on an average level in school, but that for the last several years his performance had slipped and his intelligence was below average. Defendant was also described as a "belligerent" and "hostile" young man who is "easily angered" and "has a potential for explosive acting out." The psychologist evaluating defendant did not believe an identified learning disability bore on defendant's ability to conform his conduct to law. There was also testimony of those who were optimistic about defendant's chances for rehabilitation. There was not enough from which to gauge

defendant's response to past treatment efforts. He had participated in the Dede Wallace Wilderness Program for only a month before being withdrawn as a security risk because of the charges in this case.

■ The factor that influenced the court most was the heinous nature of the alleged crimes. For purposes of the transfer hearing, a court may assume the juvenile committed the alleged offenses. *In re Sealed Case,* 893 F.2d at 369 (citing *Doe,* 871 F.2d at 1250 n. 1; *In re J. Anthony G.,* 690 F.Supp. 760, 763 (S.D.Ind.1988); *In re T.W.,* 652 F.Supp. 1440, 1442 (W.D.Wis.1987)). Here, defendant was charged with committing violent, senseless, and dehumanizing acts during the night of July 6, 1993 and continuing into the morning of July 7. Defendant and three other young males began by stealing an automobile and arming themselves with .38 caliber revolvers, which defendant supplied. They first robbed a pedestrian at gunpoint and then forced him to completely disrobe and left him naked, lying in the road. They then ran two cars off the road, robbed the occupants at gunpoint and took one of the cars. They robbed another pedestrian. Their next encounter was deadly. Defendant and Michael Green approached a car stopped at a traffic light with guns drawn. They forced the passengers, a husband and wife, out of the car and Green shot the husband, who is not alleged to have resisted, in the head, killing him instantly.

Defendant joined in on another night of terror three days later. Defendant and his cohorts again stole an automobile. This night they attempted another armed robbery of a pedestrian. They robbed a couple, physically assaulting the man and forcing the woman to remove her clothes leaving her naked in the street. The group then robbed four persons at gunpoint and forced them to lie down. Green fired a shot into the ground near one victim's head.

■ Section 5032 does not instruct courts to weigh one factor more heavily than another; the weight a court decides to assign each factor is within its discretion. *United States v. Hemmer,* 729 F.2d 10, 17 (1st Cir.) (citation omitted), *cert. denied,* 467 U.S. 1218, 104

S.Ct. 2666, 81 L.Ed.2d 371 (1984). The practice of giving great weight to the nature of the alleged offense in determining a juvenile's prospect for rehabilitation has been sanctioned by several courts. *See Doe,* 871 F.2d at 1255 ("the seriousness of the crime obviously can be given more weight than other factors in determining whether there is a 'realistic chance' of rehabilitation, and hence whether a transfer is appropriate"); *Alexander,* 695 F.2d at 401 ("emphasis on the lack of a likelihood for rehabilitation in light of the nature of the crime was not an abuse of discretion"); *Hemmer,* 729 F.2d at 18 ("In light of the gravity of the crime involved, weighed against the other five section 5032 factors, we cannot say that the district court struck the balance improperly.").

██ Contrary to defendant's assertions, the court did not ignore the possibility of better addressing defendant's learning disability within the state juvenile system. Neither was the court "predisposed" against the possibility of rehabilitation in defendant's case. Rather, the court did not see much hope of rehabilitation in the state system because defendant could only be required to remain in state custody for two years. The court reached its conclusion that rehabilitation was unlikely not due to any predisposition on the issue, but primarily because of the heinous nature of the alleged offenses. In the court's opinion, this factor outweighed any factors that supported trying defendant as a juvenile. We hold that the District Court did not abuse its discretion in granting the transfer motion.

### III.

Accordingly, the judgment of the District Court is AFFIRMED.