**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**T.F.F., A Juvenile Male, Defendant–
Appellant.**

No. 94–5978.

United States Court of Appeals,
Sixth Circuit.

Argued May 4, 1995.

Decided May 30, 1995.

Thomas J. Wright (argued and briefed), Federal Defender Services of Eastern Tennessee, Greeneville, TN, for defendant-appellant Juvenile Male.

Before: KENNEDY and SUHRHEINRICH, Circuit Judges; CHURCHILL, District Judge.*

KENNEDY, Circuit Judge.

Defendant, a juvenile male, was charged in a sealed two-count information with carjacking, in violation of 18 U.S.C. § 2119, and use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). Defendant appeals the District Court's order granting the United States' motion to prosecute defendant as an adult pursuant to the Federal Juvenile Delinquency Act ("FJDA"), 18 U.S.C. § 5032. For the following reasons, we affirm.

## I. Facts and Background

■ "The purpose of the FJDA is to 'remove juveniles from the ordinary criminal process in order to avoid the stigma of a prior criminal conviction and to encourage treatment and rehabilitation.'" *United States v. One Juvenile Male*, 40 F.3d 841, 844 (6th Cir.1994) (quoting *United States v. Brian N.*, 900 F.2d 218, 220 (10th Cir.1990)). This purpose, however, must be balanced against the need to protect the public from violent offenders. *Id.* The FJDA, therefore, provides that a juvenile who commits a felony when he is fifteen or older may be proceeded against as an adult in federal district court if it would be "in the interests of justice." 18 U.S.C. § 5032.

■ The FJDA directs the court to consider and make findings upon the following factors when determining the appropriateness of a transfer: (1) the age and social background of the juvenile; (2) the nature of the alleged offense; (3) the extent and nature of the juvenile's prior delinquency record; (4) the juvenile's present intellectual development and psychological maturity; (5) the nature of past treatment efforts and the juve-

David P. Folmar (argued and briefed), Office of the U.S. Atty., Knoxville, TN, for plaintiff-appellee U.S.

---

* The Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation.

nile's response to those efforts; and (6) the availability of programs designed to treat the juvenile's behavioral problems. *See* 18 U.S.C. § 5032. The court, however, is free to determine how much weight to give each factor. *See One Juvenile Male*, 40 F.3d at 845–46.

A district court's transfer order is appealable before trial under the collateral order doctrine. *Id.* at 843–44. We review the District Court's order for abuse of discretion. *Id.* at 845. An abuse of discretion may occur if the district court fails to make the required factual findings, or if those findings are clearly erroneous. *See United States v. Juvenile Male # 1*, 47 F.3d 68, 71 (2d Cir. 1995). In the present case, the District Court considered each of the six factors listed above. The District Court noted that the defendant, who was seventeen years and ten months when the crimes were allegedly committed, did not have a supportive family environment. Defendant had been placed in the custody of his grandmother because his mother was unable to care for him. Many members of defendant's family, including his grandmother, had been convicted of drug offenses. Defendant dropped out of school in the eighth grade. The District Court concluded that defendant's grandmother was incapable of providing guidance to defendant.

The District Court noted that defendant had been involved with the Hamilton County Juvenile Court since he was thirteen years old. Defendant had been convicted of malicious mischief and attempted auto theft. Defendant had been in house arrest and intensive probation, but failed to comply with the restrictions placed upon him. Additionally, defendant had been committed to and fled from two Tennessee Department of Youth Development facilities. In fact, defendant had recently run away from one of the facilities when the crimes in this case occurred.

The District Court then considered defendant's intellectual and psychological maturity. Psychological tests revealed that defendant was within the low average to borderline range of intellectual ability. The psychologist who examined defendant concluded that defendant was self-centered, and had little awareness of events happening around

him or of the impact of his behavior on others. The psychologist further concluded that defendant was antagonistic and harbored significant internal anger. The District Court noted that the juvenile system had tried to no avail to control defendant, and that defendant could not remain in the Tennessee juvenile system after he reached nineteen. The Court heard testimony from two probation officers about possible placements for defendant in the state juvenile system. At the time of the transfer hearing, the Hamilton County Juvenile Court had determined that defendant would be transferred and tried as an adult on the state criminal charges stemming from the April 29, 1994 incidents.

The court also considered the nature of the offense, assuming for the purpose of the transfer hearing that defendant had committed the alleged offense. *See One Juvenile Male*, 40 F.3d at 845. The Information alleged that on April 29, 1994, defendant and several other young males approached a car in Chattanooga, Tennessee and removed the driver from the car at gunpoint. The driver was searched, robbed, forced to "bark like a dog," and then placed into the trunk. Defendant and another youth then drove around Chattanooga and Bradley Tennessee, stopping to get gas and pick up a friend. The three youths stopped the car in Cleveland, Tennessee and removed the driver from the trunk. The driver was told to cover his eyes and walk into a field. Defendant stated, "Let's shoot him in the knees." The driver was then shot four to five times with two firearms. The bullets entered the driver's right side, his arm, and the trunk of his body. The youths then left the area in the driver's car, and the driver crawled out of the field and summoned help.

After considering all of the factors, the District Court concluded that "the interest of justice requires that the public be protected from [defendant] and that he be transferred for prosecution as an adult." The District Court emphasized that the state juvenile system had tried unsuccessfully to control defendant's behavior, and that the offense was particularly egregious.

## II. Failure to Develop an Adequate Record

 Defendant first argues that the District Court abused its discretion by failing to develop a record regarding the availability of rehabilitative juvenile programs in Tennessee and elsewhere. At the hearing, Joseph Oldham, a state juvenile probation officer, testified about available juvenile facilities in Tennessee. Oldham, who worked for the Department of Youth Development ("DYD"), was familiar with defendant. Defendant previously had been committed to and run away from DYD's facilities. Oldham testified that if defendant were committed to DYD, he probably would be sent to Taft, "which is the institution that would house the most unruly," or another high security facility. Oldham explained that these facilities offered programs for juveniles until they were nineteen. Carl Miller, an intensive probation officer for the Hamilton County Juvenile Court, also testified. Miller had been defendant's probation officer. He testified that defendant had been unwilling to work with him, and that he previously had recommended that defendant be committed to DYD, where he could be placed in a secure facility.

The District Court reasoned that because defendant was eighteen at the time of the transfer hearing, there was little time left to rehabilitate defendant within the juvenile system. The Court also noted that the juvenile system had been unable to successfully control defendant's behavior thus far. The Court concluded that the state system could not offer defendant any prospect of rehabilitation. This finding is well supported by the record and is not clearly erroneous. We reject defendant's assertion that the District Court's findings are inadequate because it did not examine the availability of facilities outside of Tennessee. Although the FJDA requires the Court to consider available juvenile treatment options, the District Court is not required to conduct a nationwide search for such programs.[1]

## III. Failure to Consider the Presumption in Favor of Rehabilitation

Defendant also contends that the District Court abused its discretion by failing to consider the presumption in favor of juvenile rehabilitation. Defendant bases this argument on the fact that the District Court never mentioned the presumption in favor of treatment at the transfer hearing, and did not expressly state that the presumption had been rebutted.

 At a transfer hearing, the government bears the burden of rebutting the statutory presumption of juvenile treatment. See United States v. A.R., 38 F.3d 699, 703 (3d Cir.1994). "Thus, a motion to transfer is properly granted where a court determines that the risk of harm to society posed by affording the defendant more lenient treatment within the juvenile justice system outweighs the defendant's chance for rehabilitation." One Juvenile Male, 40 F.3d at 844. The FJDA requires the District Court to make findings regarding each of six enumerated factors, and to consider each factor in determining whether the transfer would be in the "interests of justice." 18 U.S.C. § 5032. In the case at hand, the District Court considered and made findings regarding each factor, and concluded that the need to protect the public outweighed defendant's chance for rehabilitation. The statute does not require more. We reject the argument that a court must state the presumption in favor of treatment at each transfer hearing, or expressly state that the presumption has been rebutted.

## IV. The Availability of Treatment Past Age Nineteen

 Next, defendant argues that the District Court erroneously concluded that defendant could not be kept in a juvenile facility beyond his nineteenth birthday. At the transfer hearing, Oldham testified that defendant could be kept in DYD's facilities until he reached nineteen. Oldham was then

---

1. We do not have the question of whether it could be an abuse of discretion for a district court to fail to consider evidence presented regarding available juvenile programs in other jurisdictions. In the present case, defendant has not suggested other available juvenile facilities suitable for defendant.

asked what would occur if defendant reached his nineteenth birthday without completing the program. Oldham initially stated that he did not know what would happen, and it would be speculative for him to guess. He then testified that he believed that defendant could remain past his nineteenth birthday if he had not yet completed the program. Based upon this testimony, the District Court's finding that defendant could not remain in the juvenile system after he reached nineteen was not clearly erroneous. Moreover, Oldham's testimony clearly indicated that the available programs were not designed to treat juveniles over the age of nineteen.

### V. Section 5037

If a juvenile found to be delinquent is between eighteen and twenty-one and has committed a Class A, B, or C felony, the District Court may order official detention for up to five years. 18 U.S.C. § 5037(c)(2).[2] The Court may impose detention for up to three years in the case of other crimes. *Id.* The record of the transfer hearing demonstrates that the District Court was aware of section 5037. Indeed, counsel for defendant urged the District Court to impose the maximum juvenile detention period if defendant were found to be delinquent instead of transferring him to be tried as an adult.[3] Relying upon section 5037, defendant argues that the District Court's finding that defendant could not be kept past the age of nineteen was clearly erroneous. However, the District Court did not find that defendant could not be detained as a juvenile past his nineteenth birthday. Rather, the District Court found that there were no available juvenile programs to treat defendant once he reached nineteen. This finding is not clearly erroneous.

### VI. The Appropriate Evidentiary Standard

■ Finally, defendant argues that the District Court erred by failing to apply the clear and convincing standard to the transfer determination. This Court has not previously addressed the appropriate evidentiary standard to be applied to transfer determinations. The three circuits to address this issue, however, have all held that the preponderance of the evidence standard should be used. *See United States v. Parker,* 956 F.2d 169, 171 (8th Cir.1992); *United States v. A.R.,* 38 F.3d 699, 703 (3d Cir.1994); *United States v. Doe,* 49 F.3d 859, 868 (2d Cir.1995). We agree. The clear and convincing standard is inconsistent with the civil nature of the transfer hearing:

> A transfer hearing under the [FJDA] is not a criminal proceeding designed to explore the defendant's guilt or innocence. That question is to be determined by means of the eventual trial, regardless of whether the court concludes that the defendant should be tried as an adult or as a juvenile. Nor does the hearing under the Act affect whether the defendant will be confined, either prior to or after trial. We thus consider the [transfer] proceedings to be quite different from proceedings in which the clear-and-convincing-evidence standard is appropriate.

*Doe,* 49 F.3d at 868 (citations omitted). The clear and convincing standard is also incompatible with the discretionary nature of the transfer determination, which involves balancing the often conflicting goals of promoting juvenile rehabilitation and protecting the public safety. *See One Juvenile Male,* 40 F.3d at 844.

### VII. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the District Court.

---

2. Defendant argues, and we assume for the purpose of defendant's argument, that the age listed in section 5037 refers to the juvenile's age at the dispositional hearing.

3. Defendant assumes that defendant could be detained for eight years as a juvenile: five years for the armed carjacking and three years for the use of a weapon during a crime of violence. We express no opinion about whether section 5037 permits consecutive sentences when a juvenile commits multiple felonies.