UNITED STATES of America, Plaintiff,

v.

DION L. (a juvenile), Defendant.

Criminal No. 97–741 BB.

United States District Court,
D. New Mexico.

Sept. 10, 1998.

Norman C. Bay, Assistant U.S. Attorney, Albuquerque, NM, for plaintiff.

Judith A. Rosensein, Assistant Federal Public Defender, Albuquerque, NM, for defendant.

### *MEMORANDUM OPINION AND ORDER GRANTING TRANSFER*

BLACK, District Judge.

THIS MATTER came before the Court on the Government's motion to transfer Dion L. to adult status, and the Court having conducted an evidentiary hearing on May 27, 1998, and considered the brief of counsel, FINDS the motion must be GRANTED.

#### *Discussion*

■ This case presents an all too familiar fact pattern where a Native American youth is charged with a heinous crime and neither of the incarceration alternatives is satisfactory. Generally, the juvenile is under eighteen and, if tried under the juvenile delinquency statute, may only be held until his twenty-first birthday. 18 U.S.C. § 5037. Since this matter came on for hearing after this juvenile had reached his eighteenth birthday, he may be incarcerated for a maximum of five years, still not a sufficient time to engender confidence in the system's ability to rehabilitate the youth and thus protect the public upon his release. On the other end of the

spectrum, a transfer order will result in a teenager being incarcerated with repeat offenders for decades. Nor does the federal adult penal system make any pretense of offering rehabilitation services. The prospect for Defendant's successful reintegration into the community at mid-life thus appears bleak. However, since there is presently no alternative between these two extremes, the Court is forced to apply the six factors set forth in 18 U.S.C. § 5032 and choose one of the two unsatisfactory options. In this case, the six-factor balancing dictates a transfer to adult status.

## I. *Facts*

■ For purposes of this proceeding, the Court must assume the truth of the offense charged. *United States v. Leon D.M.*, 953 F.Supp. 346 (D.N.M.), *aff'd*, 132 F.3d 583 (10th Cir.1997). This case involves the exceptionally brutal beating and murder of eighteen year old Reuben Thomas. Reuben was riding around the Farmington area with his "friends" including the juvenile, Defendant Dion L. At some point after all involved had consumed substantial portions of alcohol, Reuben made eye contact with Dion. Defendant interpreted this as a sign of aggression and began beating Reuben with his fists. Dion then took his pulse and when it was determined Reuben was still breathing, Dion began beating him again.

During the beating, the driver was instructed to drive the vehicle near the San Juan River. Once the vehicle came to a stop near the San Juan River, Dion and another youth, Craig B., pulled Reuben from the vehicle and, after checking his pulse, resumed beating Reuben. Dion repeatedly struck Reuben with his fists and then, after he was unconscious, forcibly kicked Reuben's head four or five times with his steel-toed boots.

After they had severely beaten Reuben, Dion and Craig paused to see if he was still alive. Noticing that his head was moving slightly, they resumed the beating. When they thought he was dead, Reuben was dragged toward the river. To his credit, Dion testified he was unwilling to throw Reuben into the river, so Craig apparently did

that alone. Reuben's decayed body was found three months later. The autopsy report revealed that Reuben died of blunt force injuries to the head and drowning.

## II. *The Six Statutory Factors*

### A. *Age and Social Background*

Dion was just two months short of eighteen years old at the time of the alleged homicide. He comes from a lower income family. His parents were divorced when Dion was seven years old and both parents have been troubled by alcohol abuse. However, the parents are both employed and extremely supportive of their children. There was no report of physically abusive behavior in any of the households in which Dion resided while growing up.

Dion's father sought counseling for not only his own substance abuse problem, but also Dion's. Under his father's supervision, Dion completed treatment for his substance abuse. His father said that at the time he was not aware of the extent of Dion's actual consumption of alcohol and that he assumed Dion was merely experimenting.

Defendant's age is clearly in favor of transfer and his social background is largely unremarkable and therefore basically neutral.

### B. *The Nature of the Alleged Offense*

It is beyond cavil that this was a senseless and savage act. Motivated by alcohol and possibly youthful insecurity, Defendant brutally punished Reuben for what he perceived to be an act of aggression. Reuben sustained blunt force injuries to his head and neck that included separate lacerations to his face ranging from ½ inch to 1¾ inches in depth. Additionally, the bones of the victim's nose were fractured and four teeth were dislodged. The autopsy report confirmed that the three teeth, human tissue, blood, and black tennis shoe found at the river's edge were Reuben's.

There is no question that this factor points strongly and unequivocally toward transfer.

### C. The Extent and Nature of the Juvenile's Prior Record

Dion was suspended and expelled from various schools for using drugs and alcohol, and for carrying a knife and scissors as weapons. He also had several encounters with the law. Dion was first arrested by the Navajo Department of Public Safety for disorderly conduct in 1994. This arrest arose out of the actions of Dion and his father at a squaw dance where they became intoxicated. Dion was fourteen.

That same year he was arrested and charged in state court after a drug dog alerted on him at school. A butterfly knife and a marijuana pipe were confiscated. The next year, 1995, Dion was charged with being a minor in possession by consumption of alcohol. Two years later, Dion was arrested for vandalizing an art display at a community college building. When confronted, he resisted officers and had to be physically restrained.

The prior record derives basically from substance abuse and its effects. Moreover, given the current legal landscape, these are relatively minor offenses. Defendant's record as a whole, then, augurs against transfer to adult status.

### D. Dion's Intellectual Development and Psychological Maturity

Dion was referred for a court-ordered psychological evaluation to determine his amenability to treatment as a juvenile. The psychologists reviewed his records and interviewed Dion personally, as well as performing a series of psychological tests. However, the psychologists' evaluations were limited by the advice of defense counsel not to discuss the events surrounding this case.

Both psychologists testified that Dion is at least of average intelligence and one recognized Dion possessed exceptionally polished writing skills. He also demonstrated no psychopathy or antisocial personality disorder. Both doctors also concluded Dion is psychologically immature and something of a follower. There is also no question that whatever level of judgment Dion possesses was sub-stantially impeded on the night in question by alcohol.

The psychological factor that most impressed the Court, however, was Defendant's lack of remorse. Dr. Valdez testified that Dion recognized that he had shown disrespect for his family and regretted the dishonor they incurred because of his current legal situation. Dr. Enfield also acknowledged Dion was remorseful for bringing shame on his family. However, no one could testify Dion ever displayed any perceptible emotion concerning Reuben's death. Defendant got up and went to school the next day as though nothing had happened. After school he disposed of the steel-toed boots he used to kick Reuben senseless. Indeed, there was testimony that at the murder scene Defendant said to one of his friends, "I thought you were supposed to feel something when you killed someone." As much as anything else, this failure to express remorse or "feel anything" leads the Court to conclude that in spite of the psychological testimony to the contrary, rehabilitation within the five-year maximum permitted is unlikely in this case.

### E. Nature of Past Treatment Efforts and Dion's Response

Treatment efforts to address Dion's alcohol problem began when he was fourteen. He attended a series of counseling sessions beginning on a weekly basis. The sessions progressed to every two weeks and eventually bimonthly until the treatment was concluded. In addition to the counseling sessions, Dion attended several AA meetings. Dion left the program because he felt it was not "geared for adolescence." Dr. Enfield testified that in his opinion the treatment was too short. Dr. Valdez felt the interventions were too limited.

Following his arrest for this offense, Dion was placed at the Intermountain Youth Center. During Dion's brief stay at this facility, he exhibited sufficient youthful rebellion regarding house standards that he was required to be transferred to the Santa Fe Juvenile Detention Center. At the Santa Fe Detention Center, however, Dion has demonstrated significant progress. He is reported

to be a model prisoner and making good progress toward educational goals.

On the whole, this factor would move the Court against transfer if Dion could receive more than five years of rehabilitative therapy. However, since that is the limit on juvenile incarceration, the Court must conclude five years is likely an insufficient time to ensure satisfactory results. As this Court observed in *United States v. Jerry Paul C.*, 929 F.Supp. 1406, 1411 (D.N.M.1996), "[m]ore than a hope of rehabilitation is necessary."

### F. *The Availability of Programs Designed to Treat Juvenile Behavioral Problems*

The Federal Bureau of Prisons ("BOP") currently has no permanent facility for the incarceration of juvenile offenders. BOP does, however, have contracts with several public and private facilities able to provide counseling and rehabilitation to offenders such as Dion. Unfortunately, the contracts change and juveniles are often assigned depending on where space is then available. While some of the current contract facilities appear to have the capacity for intensive individual counseling which is the one therapy that appears to have proven beneficial to Dion, most do not. Dion's experience with group counseling appears to have proven less successful.

The Court would prefer to make the potential benefits of juvenile rehabilitation programs available to Dion, as these clearly offer the best chance of success. Once again, however, the Court must reluctantly conclude nothing available in the current contract facilities offers a substantial likelihood of success within the five years available.

While the adult facilities make no attempt at rehabilitation, there is a 500–hour alcohol and substance abuse program available for adults incarcerated within the BOP. If Dion is transferred to adult status and is convicted, this Court can recommend that Dion be enrolled in this alcohol and substance abuse program and also recommend that mental health counseling be made available.

### Conclusion

The purpose of the Federal Juvenile Delinquency Act, 18 U.S.C. § 5031 *et seq.*, is to remove juveniles from the ordinary criminal process and to encourage treatment and rehabilitation. *United States v. Brian N.*, 900 F.2d 218, 220 (10th Cir.1990). However, this purpose must be balanced against the requirements that the public be protected from "violent and dangerous individuals and providing sanctions for anti-social acts. And that balance must be struck by the district court in the context of a transfer hearing." *United States v. Alexander*, 695 F.2d 398, 401 (9th Cir.1982) (citations omitted). The six-factor test is designed to provide an analytical framework for considering these competing interests. Once these factors are considered, "a motion to transfer is properly granted where a court determines that the risk of harm to society posed by affording the defendant more lenient treatment within the juvenile justice system outweighs the defendant's chance for rehabilitation." *United States v. One Juvenile Male*, 40 F.3d 841, 844 (6th Cir.1994). In this case, the Court does not believe five years is sufficient time to provide Dion the rehabilitation necessary to ensure society that Dion L. does not again abuse alcohol and become a threat to the public.

Now, therefore,

**IT IS ORDERED** that Defendant DION L. be transferred to adult status.