*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0111p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

No. 10-3283
UNITED STATES OF AMERICA,
                          *Plaintiff-Appellee,*

          *v.*                                          Nos. 10-3283/4264

RIGOBERTO GOMEZ-GOMEZ, aka Aleo
Gomez, aka Felix A. Mercado Baez, aka
Jhony Ventura, aka Chapa, aka Choppa,
                          *Defendant-Appellant.*

No. 10-4264
In re: RIGOBERTO GOMEZ-GOMEZ, aka Aleo
Gomez, aka Felix A. Mercado Baez, aka
Jhony Ventura, aka Chapa, aka Choppa,
                          *Petitioner.*

_____

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus and
On Petition for a Writ of Mandamus.
No. 09-00209-001—Gregory L. Frost, District Judge.

Argued: April 20, 2011

Decided and Filed:  May 5, 2011

Before:  MARTIN, SILER, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** E. Dennis Muchnicki, Dublin, Ohio, for Appellant.  Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:**  E. Dennis Muchnicki, Dublin, Ohio, for Appellant.  Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, Robyn Jones Hahnert, Kevin W. Kelley, ASSISTANT UNITED STATES ATTORNEYS, Columbus, Ohio, for Appellee.  Marquette D. Evans, EVANS LAW OFFICE, Cincinnati, Ohio, for Amicus Curiae.

1

---

**OPINION**

---

BOYCE F. MARTIN, JR., Circuit Judge.  In December 2009, the United States charged Defendant-Appellant Rigoberto Gomez-Gomez, a Mexican citizen, in a superseding indictment with drug trafficking, money laundering, and operating a continuing criminal enterprise.  Gomez-Gomez claimed to be a juvenile and moved to dismiss the indictment on the grounds that he had not been brought before the district court pursuant to the provisions of the Juvenile Delinquency Act.  The district court found that he was an adult and denied the motion.  Thirty days later, Gomez-Gomez moved the court: (1) to reconsider; (2) for an order to depose witnesses in Mexico; and (3) to enlarge his time to appeal the earlier denial.  The district court denied all three motions.  Gomez-Gomez appeals the denial of these three motions, and petitions this Court for a writ of mandamus directing the district court to authorize the proposed depositions and to reconsider its prior ruling.  We lack jurisdiction to consider Gomez-Gomez's appeals from the denials of his three pre-trial motions.  In addition, we deny Gomez-Gomez's petition for a writ of mandamus.

**I. BACKGROUND**

On December 3, 2009, the United States issued a superseding indictment charging Gomez-Gomez with three drug conspiracy counts, five drug distribution counts, four substantive money laundering counts, one money laundering conspiracy count, and one count of operating a continuing criminal enterprise.  On December 7, Gomez-Gomez filed a motion to dismiss the indictment for lack of jurisdiction because he was a juvenile who had not been brought before the district court pursuant to the provisions of the Juvenile Delinquency Act, 18 U.S.C. § 5032.  He asserted that he was born on October 1, 1992, and was therefore less than seventeen years old at the time that he allegedly committed the offenses at issue.  For the purposes of proceeding under the Act, a juvenile is defined as a person who has not yet attained the age of twenty-one.

*See id.* § 5031. The district court held a two-day evidentiary hearing regarding Gomez-Gomez's motion.

The government presented the following evidence that Gomez-Gomez was an adult at the time of the offenses: (1) documents indicating that Gomez-Gomez had provided seven different dates of birth ranging from 1977 to 1985 under various names during his time in the United States; (2) two driver's licenses; (3) a dental receipt; (4) two applications for a marriage license; (5) documents appearing to be Mexican birth certificates bearing the names of Gomez-Gomez, his mother, and his father;[1] and (6) testimony from Braulio Martinez, a man who grew up in Gomez-Gomez's hometown. In addition, the United States introduced evidence regarding Gomez-Gomez's true age in light of the documents through the testimony of immigration officials and law enforcement officers.

Gomez-Gomez presented the following evidence that he was a juvenile at the time of the offenses: (1) a certified copy of a birth certificate from Mexico containing the Apostille certification required by the Hague Convention establishing his birthdate as October 1, 1992;[2] (2) testimony from Victoria Gomez Chavez, his maternal aunt, stating that she was present at his birth; (3) testimony from Manual Gomez, Gomez-Gomez's brother, stating that he was present at Gomez-Gomez's birth; and (4) testimony

---

[1] Gomez-Gomez claims that the birth certificates were not admissible under the Federal Rules of Evidence because they were not authenticated. However, the United States offered them not as certified birth certificates, but simply as documents that were in the possession of the Gomez family at the time of a search. (R.E. No. 129, Transcript of Motion Hearing Proceedings, at 183). The district court clarified that they were not certified birth certificates but had other probative value. (*Id.* at 184). Thus, the district court did not err in considering the birth certificates as evidence of Gomez-Gomez's age. *Cf. United States v. Salgado-Ocampo*, 50 F. Supp. 2d 908, 912-13 (D. Minn. 1999) ("Not a single piece of evidence reviewed in this opinion concerning the date of defendant's birth is entirely reliable, each having its own individual failings as noted above by the court. While such evidence may not be admissible in the context of a trial, for purposes of this proceeding the court has no choice but to choose the most reliable evidence and determine defendant's date of birth.").

[2] Gomez-Gomez and his amicus curiae, the United States of Mexico, express concern that the district court could make a factual finding that Gomez-Gomez was born before the October 1, 1992 birthdate listed for him on the Mexican birth certificate bearing an Apostille certification. However, the district court admitted the exhibit into evidence, and it did not err in declining to give it conclusive weight. The Hague Conference on Private International Law has clarified the effects of an Apostille certification: "An Apostille only certifies the *origin* of the public document to which it relates . . . . An Apostille does *not certify the content* of the public document to which it relates." Hague Conference on Private International Law, The ABCs of Apostilles: How to Ensure That Your Public Documents Will be Recognized Abroad 23 (2010), *available at* http://www.hcch.net/upload/abc12e.pdf. Thus, the district court did not err by declining to give the birth certificate conclusive weight.

of Dr. Jolie Brams, a psychologist, that Braulio Martinez's testimony was highly unlikely to be accurate. In addition, Gomez-Gomez supported his motion to dismiss with an affidavit from Juana Asencion Gonzalez, his maternal aunt, stating that she was present at his birth. However, Gonzalez spoke only Zapoteco, a language spoken by indigenous peoples in southern Mexico, and the district court was unable to find a translator. The district court indicated that a continuance might be appropriate to allow counsel for defense to find a qualified interpreter, and asserted the right to exclude the witness if a translator could not be found.

On January 13, 2010, the district court denied the motion to dismiss, finding that Gomez-Gomez's birthdate was October 1, 1978. The court reasoned in part that if Gomez-Gomez had been born in October 1992, as he claimed, then the driver's license issued to him in February 2003, and the marriage licenses he applied for in February and June 2003, would have been issued when he was ten years old. Also, the Apostille-certified birth certificate listed Gomez-Gomez's mother as twenty-four years old at the time of his birth, and it was undisputed that Gomez-Gomez's brother was thirty-five at the time of the district court's ruling–meaning that if the Apostille-certified birth certificate were accurate, his mother would have been six years old when the brother was born. On January 14, 2010, the district court issued a decision precluding the testimony of Juana Asencion Gonzalez because the court was unable to locate a translator.

On February 12, Gomez-Gomez filed three motions. The first asked the court to reconsider its order denying the motion to dismiss. The second was a renewed motion to take depositions in Mexico of five witnesses: his second-grade teacher, a physician who administered his vaccinations, a priest from the church where he was baptized, his sister, and his father. The third, in the alternative, asked the court to extend the time for him to appeal the earlier denial of his motion to dismiss. On February 24, the district court denied all three motions. Gomez-Gomez appeals.

## II. ANALYSIS

### A. Interlocutory Appeal

A court of appeals "must determine its own jurisdiction and is bound to do so in every instance." *Dickerson v. McClellan*, 37 F.3d 251, 252 (6th Cir. 1994). Thus, we first must determine whether we have interlocutory appellate jurisdiction to consider the district court's denials of Gomez-Gomez's motions to reconsider, to take depositions in Mexico, and to enlarge his time to appeal. Our jurisdiction is limited to "appeals from [] final decisions of the district courts." 28 U.S.C. § 1291. In criminal cases, the final judgment rule generally "prohibits appellate review until conviction and imposition of sentence." *Flanagan v. United States*, 465 U.S. 259, 263 (1984). Whether Gomez-Gomez is a juvenile or an adult affects the district court's subject matter jurisdiction. *Cf. United States v. Chambers*, 944 F.2d 1253, 1259 (6th Cir. 1991) (stating that "the certification requirement [of the Federal Juvenile Delinquency Act] is a prerequisite to the district court's subject-matter jurisdiction in cases where the government proceeds against juveniles accused of performing acts which would be federal crimes if committed by adults"). However, typically, "denial of a motion to dismiss, even when the motion is based upon jurisdictional grounds, is not immediately reviewable." *Catlin v. United States*, 324 U.S. 229, 236 (1945).

The Supreme Court carved out a narrow exception to the final judgment rule in *Cohen v. Beneficial Industries Loan Corp.*, 337 U.S. 541, 546-47 (1949). Under the collateral order doctrine, an order may be immediately appealable if it: (1) "conclusively determine[s] the disputed question"; (2) "resolve[s] an important issue completely separate from the merits of the action"; and (3) "[is] effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). These three requirements must be interpreted "with the utmost strictness in criminal cases." *Flanagan*, 465 U.S. at 265.

Two of Gomez-Gomez's appeals clearly do not satisfy the criteria of the collateral order doctrine. The denial of a motion to reconsider an earlier order is not an

immediately appealable collateral order because it does not conclusively determine the disputed question, it merely resolves whether to revisit an important issue rather than the issue itself, and it is reviewable following final judgment. *Cf. Lora v. O'Heaney*, 602 F.3d 106, 111-12 (2d Cir. 2010) (holding that an appeal from an order denying reconsideration of a qualified immunity ruling fails to meet the requirements of the collateral order doctrine). The denial of a motion to depose witnesses is not an immediately appealable collateral order because it is reviewable on appeal from a final judgment. Whether the denial of Gomez-Gomez's motion to file an untimely appeal is immediately appealable presents a closer question.

Gomez-Gomez contends that because the underlying order denying his motion to dismiss would be appealable as a collateral order, the denial of his motion to file an appeal out of time from that order is immediately appealable as well. The United States concedes that there is authority supporting the proposition that where an underlying order is an appealable collateral order, the denial of a motion to file an appeal out of time from that order is also appealable. *See Diamond v. U.S. Dist. Court for Cent. Dist. of Cal.*, 661 F.2d 1198, 1198 (9th Cir. 1981) (stating that an order denying a motion to file a late notice of appeal is appealable if "the motion seeks leave to file a late appeal from . . . an order which falls within the collateral order exception"). However, in this case the collateral order doctrine does not apply to the underlying order denying the motion to dismiss.

We have held that an order transferring a juvenile for adult prosecution is immediately appealable as a collateral order. *See United States v. One Juvenile Male*, 40 F.3d 841, 844 (6th Cir. 1994). Some of the reasoning in *One Juvenile Male* suggests that a defendant indicted as an adult might be able to immediately appeal a district court's rejection of a motion to dismiss that asserts that the defendant is in fact a juvenile. First, in both cases, "the court has determined that defendant will be tried as an adult." *Id.* at 844. Second, in both cases "this determination is independent of the merits of the criminal charges against defendant." *Id.* Third, in both cases the "defendant's right to the special protections afforded juveniles at trial would be lost if

he were tried and convicted as an adult before being able to appeal the transfer order." *Id.*; *see also Chambers*, 944 F.2d at 1258 (assessing the special protection that the Juvenile Delinquency Act provides to juveniles from the adult criminal prosecution process).

However, *One Juvenile Male* is distinguishable from this case because it involved a legal rather than a factual dispute. The district court's rejection of a motion to dismiss based on the *factual* determination that Gomez-Gomez is not a juvenile is not immediately appealable under the collateral order doctrine. Several Supreme Court cases are instructive. In *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), the Supreme Court held that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291." However, in *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995), the Supreme Court held that "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." The *Johnson* Court relied on a number of considerations that are relevant to this case.

One consideration cuts in favor of Gomez-Gomez's argument that the order denying the motion to dismiss is immediately appealable. The Supreme Court suggested that when a defendant wants to appeal a district court's decision that the record sets forth a genuine issue of fact for trial, "it will often prove difficult to find any [] 'separate' question . . . that is significantly different from the fact-related legal issues that likely underlie the plaintiff's claim on the merits." *Id.* at 314. As discussed above, the factual question of Gomez-Gomez's age is not directly related to the merits of the charges against him regarding drug trafficking, money laundering, and operating a continuing criminal enterprise.

However, the remainder of the *Johnson* Court's analysis cuts against Gomez-Gomez's argument that the denial of the motion to dismiss is immediately appealable. The Court noted that the *Mitchell* Court had "explicitly limited its holding to appeals challenging . . . the purely legal issue what law was 'clearly established.'" *Id.* at 313.

The issue in *One Juvenile Male*, whether a juvenile should be transferred for adult prosecution, is a legal question regarding what is "in the interest of justice." *See* 18 U.S.C. § 5032. The issue in this case, whether Gomez-Gomez is an adult, is a factual question regarding age. In addition, the *Johnson* Court considered "the competing considerations that underlie questions of finality." 515 U.S. at 315. First, like the existence of a triable issue of fact at stake in *Johnson*, a defendant's age is "the kind of issue that trial judges, not appellate judges, confront almost daily. Institutionally speaking, appellate judges enjoy no comparative expertise in such matters." *Id.* at 316. Thus, "interlocutory appeals are less likely to bring important error-correcting benefits here than where purely legal matters are at issue." *Id.* Second, like the issue at stake in *Johnson*, the issue of a defendant's age, "if appealable, can consume inordinate amounts of appellate time." *Id.* Resolving such a factual controversy may require reviewing an extensive pretrial record and lead to greater delay than resolving a purely legal issue. *Id.* Finally, "the close connection between this kind of issue and the factual matter that will likely surface at trial means that the appellate court . . . may well be faced with approximately the same factual issue again." *Id.* Gomez-Gomez asserts that at trial, he "would be free to introduce evidence that he was a mere teenager in support of his defense that he was not a leader of a drug operation." (Merit Brief of Defendant-Appellant Rigoberto Gomez Gomez at 37). Therefore, an interlocutory appeal concerning a defendant's age in this type of case might force an appellate court to decide an issue identical to one that it will most likely have to decide in a later appeal. *Johnson*, 515 U.S. at 317.

Thus, this Court lacks interlocutory appellate jurisdiction to consider Gomez-Gomez's appeals from the denials of his three pre-trial motions. If Gomez-Gomez is convicted and sentenced, then he may challenge the district court's denial of his motion to dismiss at that time.

**B. Petition for a Writ of Mandamus**

In addition to his direct appeal, Gomez-Gomez petitions for two alternative forms of relief in mandamus. He requests that this Court: (1) direct the district court to order

the depositions of the five proposed Mexican witnesses and reconsider its jurisdiction; or (2) order the depositions of the five proposed witnesses and then hold an evidentiary hearing itself.

"Mandamus is a drastic remedy that should be invoked only in extraordinary cases where there is a clear and indisputable right to the relief sought." *United States v. Young*, 424 F.3d 499, 504 (6th Cir. 2005). This Court, *In re Parker*, 49 F.3d 204, 207 (6th Cir. 1995), considers five factors in determining whether extraordinary circumstances warrant mandamus relief:

> 1) whether the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief needed; 2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; 3) whether the district court's order is clearly erroneous as a matter of law; 4) whether the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; 5) whether the district court's order raises new and important problems, or issues of law of first impression.

The balance of these factors weighs against mandamus relief. It is true that under the second factor, Gomez-Gomez may be prejudiced in a way not correctable on appeal if he is in fact a juvenile and is forced to go through trial without the protections of the Juvenile Delinquency Act. *Cf. Chambers*, 944 F.2d at 1258 (describing the special protections afforded juveniles by the Juvenile Delinquency Act). However, the other four factors weigh against mandamus relief.

Under the first factor, Gomez-Gomez may obtain review of the district court's decisions on direct appeal if he is convicted. *See In re Ford*, 987 F.2d 334, 342 (6th Cir. 1992) (holding that petitioner failed to demonstrate that he had no adequate alternative means of relief when he could appeal from the final judgment).

Under the third factor, the district court's orders are not clearly erroneous as a matter of law. The district court's decision to deny Gomez-Gomez's motion for reconsideration is not clearly erroneous. The district court denied Gomez-Gomez's motion to dismiss on January 12, 2010, and Gomez-Gomez filed his motion to

reconsider on February 12. The motion was untimely because it was filed more than fourteen days after entry of the district court's order.**3** *See United States v. Correa-Gomez*, 328 F.3d 297, 299 (6th Cir. 2003) (holding that "a motion for reconsideration or rehearing of a final judgment in a criminal case must be filed within the period provided by Fed. R. App. P. 4(b)(1)," which is fourteen days).**4** Furthermore, Gomez-Gomez failed to inform the district court why his additional witness testimony in support of his claim that he was a juvenile was not previously available to him. This omission provided a valid basis for the district court to deny the motion on the merits. *See, e.g.*, *Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that a district court did not abuse its discretion in refusing to consider new evidence on a motion to reconsider when movants failed to explain why their own witness's opinion was unavailable to them earlier). Moreover, the district court's reasons for denying the underlying motion to dismiss were compelling.

The district court's decision denying Gomez-Gomez's request to depose witnesses also was not clearly erroneous. Rule 15 of the Federal Rules of Criminal Procedure provides that "[a] party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice." However, Gomez-Gomez's motion did not seek to depose the witnesses to preserve testimony for trial, but to provide further evidence in support of his motion to dismiss, which the district court had denied. The district court found that Gomez-Gomez did not provide sufficient information to indicate that the witnesses were unavailable, he failed to demonstrate how

---

**3**Gomez-Gomez claims that it is inconsistent to consider the district court's denial of his motion for reconsideration a final judgment for the purpose of determining the timeliness of his appeal, but not for the purpose of determining whether the order is immediately appealable. However, this Court has confronted a similar situation and found no such inconsistency. *See Keith v. Bobby*, 618 F.3d 594, 598 & n.3 (6th Cir. 2010) (noting that although an Order of Transfer was a "final order" for the purposes of the deadline to file a motion to alter or amend a judgment, "[t]his holding does not affect the general rule that a transfer order is not final and appealable for the purposes of 28 U.S.C. § 1291").

**4**The district court stated that "Fed. R. App. P. 4(b)(1) requires that an appeal be filed in a criminal case within ten days of the date the order was filed from which a defendant is appealing." This statement is incorrect because the Rule was amended in 2009, effective December 1, 2009, to increase the time for filing a notice of appeal from ten to fourteen days. *See* Fed. R. App. P. 4 advisory committee notes (2009 Amendments). However, this misstatement is harmless because Gomez-Gomez filed his motion to reconsider thirty days after the order was filed.

the testimony was material to the offenses charged, and he gave no consideration to the arrangements that the United States or his detained codefendants would need to make to attend depositions in Mexico. This decision is not clearly erroneous.

The district court's denial of Gomez-Gomez's motion to enlarge his time to appeal was also not clearly erroneous. Rule 4(b)(4) of the Federal Rules of Appellate Procedure provides that "[u]pon a finding of excusable neglect or good cause, the district court may . . . extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b)." Gomez-Gomez's motion made no mention of excusable neglect. He offered as "good cause" that "counsel completed additional research involving cases outside of the Sixth Circuit that might persuade the Sixth Circuit to entertain the appeal." However, researching appealability is within the control of counsel. *Cf. Bishop v. Corsentino*, 371 F.3d 1203, 1207 (10th Cir. 2004) (explaining that "good cause" applies in situations in which there is no fault and the extension is necessary because of some factor not within the control of the movant); *United States v. Hirsch*, 207 F.3d 928, 929 (7th Cir. 2000) (suggesting that a court "clerk's failure to perform a ministerial act whose omission could have serious consequences for a criminal defendant" would constitute "good cause"). Researching case law is a typical prefatory step common to the appeal process. *Cf. Bishop*, 371 F.3d at 1207 ("Counsel's need to review the record, consult with the client, and, where counsel deems it desirable to obtain an additional legal perspective, are typical prefatory steps common to the appeal process."). Gomez-Gomez failed to indicate to the district court why the additional research could not have been completed within the normal time to appeal. Thus, the district court did not clearly err in denying Gomez-Gomez's motion to enlarge his time to appeal. Therefore, the fact that none of the district court's decisions are clearly erroneous weighs against mandamus relief.

Under the fourth and fifth factors, the district court's orders are not oft-repeated errors, and they do not raise issues of law of first impression. It seems that this is the first time that a defendant has challenged a factual finding that he is an adult before trial, and as discussed above, the determination of Gomez-Gomez's juvenile or adult status

is a purely factual determination.  Because only one of the five factors weighs in favor of granting mandamus relief, we deny Gomez-Gomez's petition.

### III. CONCLUSION

Because Gomez-Gomez's appeals from the denials of three pre-trial motions do not meet the requirements of the collateral order doctrine, we find that this Court lacks jurisdiction to consider them.  Because Gomez-Gomez has not shown a clear and indisputable right to mandamus relief, we deny his petition for a writ of mandamus.

APPEAL DISMISSED.